IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. ) |
| v. | ) **C O M P L A I N T** ) |
| WINDMILL FARMS NURSERY, INC., | ) **JURY TRIAL DEMAND** ) ) |
| Defendant. | ) ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Sheila Aguilar who was adversely affected by such practices. As alleged with greater specificity below, Alvaro DeSantiago was Sheila Aguilar's immediate supervisor who subjected her to unwelcome sexual comments and conduct on a daily basis. Ms. Aguilar told Alvaro DeSantiago that she wanted him to stop making sexual comments to her and otherwise subjecting her to sexual harassment. Less than a month later, DeSantiago fired her.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-5(f)(1) and (3), and Section 102 of Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Windmill Farms Nursery, Inc. ("Windmill Farms"), a Florida corporation, has continuously been doing business in the State of Florida and in the City of Zolfo Springs, and has continuously had at least 15 employees.

5. At all relevant times, Windmill Farms has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Sheila Aguilar ("Aguilar") filed a charge with the Commission alleging violations of Title VII by Windmill

2

Farms.

7. The Commission issued a Letter of Determination on February 19, 2014 finding reasonable cause to believe that Aguilar was subjected to sexual harassment by her supervisor, Alvaro DeSantiago ("DeSantiago") and was terminated in retaliation for rejecting DeSantiago's sexual advances.

8. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

9. Windmill Farms is a wholesaler of plant material.

10. Windmill Farms is based in Zolfo Springs, Florida, where the Windmill Farms nursery is located.

11. Windmill Farms employs approximately 100 agricultural workers.

12. Jason Cord ("Cord") is Windmill Farms' Vice President.

13. Nursery workers at Windmill Farms are divided into different groups.

14. One of the groups of nursery workers at Windmill Farms consists almost entirely of women whose primary task is planting.

15. DeSantiago is the supervisor who oversees the group of female planters on a day-to-day basis.

16. DeSantiago has authority to hire and fire planters and to determine work assignments.

17. Women in planting group, including Aguilar, did not regularly see or interact with Cord.

18. Aguilar worked as a planter under the supervision of DeSantiago at Windmill Farms during three separate time periods beginning in 2006, when she was sixteen years old, and again

3

in 2007 or 2008.

19. Aguilar returned to work as a planter at Windmill Farms on or about June 2011.

20. DeSantiago began to subject Aguilar to unwelcome comments and conduct of a sexual nature on a daily basis when she returned to work at Windmill Farms in June 2011.

21. Beginning in June 2011, DeSantiago subjected Aguilar to unwelcome comments of a sexual nature on a daily basis, including, but not limited to:

    a. saying that her body had "changed" since the last time she worked at the nursery and that he liked the way it had changed;

    b. saying that she had nice legs;

    c. saying that she looked good in the jeans she wore;

    d. saying that he wanted "to be with her;"

    e. saying that she should be his girlfriend;

    f. saying that she should not be with her husband but should be with him (DeSantiago) instead;

    g. promising that, if Aguilar agreed to be his girlfriend, he could punch the clock in for her so she was paid for time she did not work; and

    h. promising that, if Aguilar agreed to be his girlfriend, she could choose the planters with whom she was assigned to work.

22. One day DeSantiago took Aguilar and another female planter in a golf cart to bring back plants from another location and told Aguilar to sit in the front with him. He told Aguilar he liked her, looked her up and down, told her he wanted to grab her crotch and kept looking at her waist. DeSantiago then grabbed Aguilar's hand, but she pushed him away.

23. Aguilar also witnessed and/or had knowledge of DeSantiago directing sexual comments and conduct of a sexual nature towards other women in the planting group. The comments and conduct included, but was not limited to:

   a. Putting his hand inside the shirt of a female planter and touching her breast;

   b. Standing behind women while they bent down planting and making grunting noises or saying "que bonito culo," which means "what a nice ass;"

   c. Making comments around female planters about the types and colors of female underwear he liked; and

   d. Borrowing binoculars from another supervisor who had to oversee the grounds and using them to look at women.

24. DeSantiago's unwelcome comments and conduct of a sexual nature towards other women in the planting group occurred on a daily basis.

25. When Aguilar tried to ignore DeSantiago's unwelcome sexual comments and conduct, he laughed at her.

26. On or about September 2011, Aguilar told DeSantiago that she wanted him to stop making comments to her about her body, telling her that he wanted to be with her, and telling her that she should be his girlfriend. Aguilar told him that she knew they had to talk because he was her supervisor, so they should talk about work.

27. Prior to September 2011, when Aguilar told DeSantiago his sexual comments and conduct were unwelcome, DeSantiago had not disciplined Aguilar for any reason nor brought to her attention any problems with her work performance.

28. Immediately after Aguilar objected to DeSantiago's sexual comments and conduct,

5

advised him that his comments and conduct were unwelcome and asked him to stop, DeSantiago began to yell at Aguilar for working too slow, and demanded she plant faster.

29. On or about October 2011, DeSantiago yelled at Aguilar and her planting partner for being too slow. When Aguilar's partner asked why he yelled at them if they had planted more than a pair of women performing the same work, DeSantiago told her that she "still had a job" and told her to "go away." DeSantiago then told Aguilar she was fired.

30. DeSantiago fired Aguilar less than a month after she objected to his sexual comments and conduct, advised him that this comments and conduct were unwelcome and asked him to stop.

31. The day DeSantiago fired Aguilar, Cord was on vacation.

32. During the time period Aguilar worked at Windmill Farms, Windmill Farms had no employee handbook, no policy against sexual harassment, and provided no training on preventing or reporting harassment.

33. As a result of the foregoing, Aguilar suffered damages.

## STATEMENT OF CLAIMS

34. Since at least June 2011, Windmill Farms engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Aguilar to a sexually hostile work environment because of her sex which culminated in her termination.

35. Since at least June 2011, Windmill Farms engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by terminating Aguilar in retaliation for opposing unlawful employment activities when she rejected the sexual

advances of her direct supervisor, DeSantiago.

36. The effect of the practices complained of in paragraphs 9-33 above has been to deprive Aguilar of equal employment opportunities and otherwise adversely affect her status as an employee because of sex.

37. The unlawful employment practices complained of in paragraphs 9-33 above were intentional.

38. The unlawful employment practices complained of in paragraphs 9-33 above were done with malice or with reckless indifference to the federally protected rights of Aguilar.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Windmill Farms, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from participating in discriminatory conduct based on sex including but not limited to permitting a sexually hostile work environment, terminating employees based on their sex, and retaliating against employees who engage in statutorily protected activity such as rejecting sexual advances in the workplace.

B. Order Defendant Windmill Farms to institute and carry out policies, practices, and programs which provide equal employment opportunities women.

C. Order Defendant Windmill Farms to make whole Aguilar, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices,

including but not limited to reinstatement of Aguilar.

    D.    Order Defendant Windmill Farms to make whole Aguilar, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 9-33 above.

    E.    Order Defendant Windmill Farms to make whole Aguilar by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 9-33 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

    F.    Order Defendant Windmill Farms to pay Aguilar punitive damages for its malicious and reckless conduct described in paragraphs 9-32 above, in amounts to be determined at trial.

    G.    Grant such further relief as the Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Date: August 28, 2014

RESPECTFULLY SUBMITTED,

P. DAVID LOPEZ
General Counsel
JAMES L. LEE
Deputy General Counsel
GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity Commission
131 M Street, N.E.

Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney

KIMBERLY A. McCOY-CRUZ
Supervisory Trial Attorney

s/ Beatriz Biscardi Andre
BEATRIZ BISCARDI ANDRE
Trial Attorney
*Lead Counsel & Attorney of Record
New York Bar No. 4394599
Tel: 305-808-1753
Fax: 305-808-1835
beatriz.andre@eeoc.gov
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131